936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Fletcher MOLDEN, Plaintiff-Appellant,
v.
BRACEVILLE POLICE DEPARTMENT, Township of Braceville, f/k/a
Village of Braceville, Bishop, Officer.
Defendants-Appellees.
 No. 90-3764.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1991.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and McRAE, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Fletcher Molden ("Molden")[1] appeals the district court's grant of partial summary judgment in defendants' favor in this 42 U.S.C. Sec. 1983 action. We AFFIRM in part and REVERSE in part.
 
 I.
 
 2
 On June 7, 1987, while at police headquarters, defendant Officer Bishop received a phone call from dispatcher Audrey Irons that there was a suspicious vehicle at a truck stop located at the intersection of Route 5 and Braceville-Robinson Road in Trumbull County, Ohio. Officer Bishop proceeded to the truck stop in his patrol car. After observing the vehicle in question, he advised the police dispatcher of the license plate number. The dispatcher reported to Officer Bishop that the car was a "Code 56 out of Cleveland," which meant a stolen vehicle. In fact, the dispatcher's computer report identified the car as having a "stolen part only." Since the Township did not have a code for a car with a stolen part, the dispatcher used the code used for stolen vehicles. Upon receipt of this information, Officer Bishop asked the dispatcher to confirm that it was a Code 56, and then requested the Newton Falls dispatcher to send a backup.
 
 
 3
 As Bishop exited his vehicle, Molden and Payne's vehicle came to a stop and plaintiffs got out of the car. In his deposition Bishop testified that he called twice to the men, ordering them to stop. The passenger of the vehicle, Molden, stopped by the guard rail. The driver, Payne, entered the convenience store. Officer Bishop then approached the vehicle carrying a shotgun. He ordered Molden to go to the rear trunk area of the vehicle and to lie on the ground behind the vehicle. Bishop testified that Molden yelled and screamed and attempted to get up several times, at which point Bishop told him to shut up until his assistance arrived.
 
 
 4
 In the meantime, Bishop then yelled to Payne to come out of the truck stop. When Payne came outside, Bishop had him lie face down next to Molden. Although Bishop denied using force against either plaintiff, the testimony of witnesses inside the store indicated that Bishop kicked Payne's legs apart when he was on the ground and that he kicked him in the rib area. Witness testimony also indicated that Bishop swore at plaintiffs and pointed his gun at the back of their heads and threatened to kill them if they moved. One of the witnesses stated that neither Payne nor Molden made any attempt to assault the officer.
 
 
 5
 The backup arrived as Bishop was handcuffing the plaintiffs. One of the backup officers recognized Payne and knew that the vehicle he was driving belonged to him. Bishop then released both plaintiffs.
 
 
 6
 Plaintiffs brought suit alleging that Bishop's "unreasonable and excessive" actions violated their fourth and fourteenth amendment rights, and that Bishop's conduct was proximately caused by an unconstitutional policy or procedure of the Braceville Township Police Department. Defendants moved for partial summary judgment. The district court held that Bishop was entitled to qualified immunity and that the plaintiffs failed to create a genuine issue of material fact as to the official policy or custom claim. This appeal followed.
 
 A.
 
 7
 The doctrine of qualified immunity shields certain public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lundblad v. Celeste, 924 F.2d 627, 628 (6th Cir., 1991) (en banc), petition for cert. filed, April 15, 1991. When the defense of qualified immunity is raised in the context of a summary judgment motion, this court has held:
 
 
 8
 [S]ummary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.
 
 
 9
 Poe v. Haydon, 853 F.2d 418, 426 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989).
 
 
 10
 Actions against police officers for the use of excessive force have been recognized at least since Rochin v. California, 342 U.S. 165 (1952). See also Lewis v. Downs, 774 F.2d 711 (6th Cir.1985) (conduct of police officer that shocks the conscience of the court violates the due process clause of the fourteenth amendment). Recently, in Graham v. Connor, 490 U.S. 386, 104 L.Ed.2d 443 (1989), the Supreme Court held that excessive force claims in section 1983 actions are to be analyzed under the fourth amendment's "objective reasonableness" standard. Jackson v. Hoylman, --- F.2d ---- (6th Cir. May 22, 1991). See also Leber v. Smith, 773 F.2d 101 (6th Cir.1985) (pre-Graham Sec. 1983 case using "reasonableness" standard under the fourth amendment in Sec. 1983 context), cert. denied, 475 U.S. 1084 (1986). Reasonableness in an excessive force context is determined by considering the severity of the crime involved, the threat to the safety of the officers posed by the suspect, and any resistance to arrest. Graham, 490 U.S. 386.
 
 
 11
 In this case, the parties and independent witness testimony presented conflicting versions as to the amount and degree of force used by Officer Bishop, the very issue upon which qualified immunity in this case turns. Thus, partial summary judgment on this claim was inappropriate.
 
 B.
 
 12
 Molden also alleges error in the district court's dismissal of his claim that the alleged constitutional deprivations were proximately caused by an unconstitutional policy or practice promulgated by the Township of Braceville. Molden points to Bishop's testimony that his conduct was "based upon the policies and procedures and practices of the department," and his statements that these policies and procedures would require him to act the same way even if he had a report that the vehicle contained only a stolen part. In addition, Molden contends that the absence of procedure whereby a dispatcher can distinguish by code between stolen vehicle and vehicles containing stolen parts is also evidence of an unconstitutional Township policy.
 
 
 13
 Local governing bodies can be sued under 42 U.S.C. Sec. 1983 only if the action that is alleged to be unconstitutional implements or executes a policy or custom of that body. Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978). A local government cannot be held liable for the alleged wrongful conduct of its officials under a theory of respondeat superior, Id.; Owen v. City of Independence, 445 U.S. 622 (1980). Although Officer Bishop detained Molden pursuant to the authority vested in him by the Township, this fact does not establish that Officer Bishop had the ability to establish final governmental policy on behalf of Braceville, a requirement for imposing liability on a municipality. Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). Nor can it be said, absent further evidence, that his decision to arrest Molden was one of governmental policy. Officer Bishop and/or the dispatcher's conduct may well have constituted negligence, but that conduct does not create an inference, let alone positive proof, of faulty policies or procedures of the department.
 
 
 14
 For all the foregoing reasons, we REVERSE the grant of summary judgment as to plaintiff Molden's fourth and fourteenth amendment violations; and AFFIRM the district court's grant of summary judgment on the official policy or custom claim.
 
 
 
 *
 The Honorable Robert M. McRae, Senior District Judge for the United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Plaintiff Samuel Payne failed to perfect his appeal. See Minority Employees v. Tennessee Dep't of Employment Sec., 901 F.2d 1327 (6th Cir.) (en banc), cert. denied, 111 S.Ct. 210 (1990)